COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-146-CV

 

 

IN THE INTEREST OF

 

 



D.R.,
C.D., JR., Q.R., E.R., 

AND
Y.R., CHILDREN

                                                                                                        

 

                                              ------------

 

           FROM
THE 231ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                          I.  Introduction








Appellant Monica R. appeals
from the trial court=s order
terminating her parental rights to each of her five children D.R., C.D., Jr.,
Q.R., E.R., and Y.R.[2]  In three points, Monica challenges the legal
and factual sufficiency of the evidence in support of the court=s termination findings, as well as the court=s termination of her parental rights under section 161.001 of the
Texas Family Code.  We will affirm.

                          II. 
Factual and Procedural Background

Monica R. and her long-time
companion, Charles D., are the natural parents of C.D., Jr., Q.R., E.R., and
Y.R.[3]  Although Monica and Charles were never
married, the two lived together intermittently over the years and generally
shared in the responsibility of providing for all five children.  Each child suffers from various psychological
and/or emotional disorders that require treatment by way of various daily
prescription medications.  In addition to
the issues facing the children, Monica also suffers from severe mental
retardation, post traumatic stress disorder, manic depression, and anxiety. 








Shortly after giving birth to
E.R. in 1999, Monica discovered that both she and Charles were HIV-positive and
that, as a result, E.R. had also been infected with the HIV virus.  Doctors immediately began treating E.R.=s HIV with three prescription medications that were to be administered
twice daily.  Because the HIV virus is
capable of developing a resistence to preventive medications that are not
administered consistently, E.R.=s physician explained that it was imperative that E.R. continue to
take his medication regularly after being released from the hospital.  However, after discussions with Monica,
doctors were hesitant to release E.R. to her out of concerns that her mental
deficiencies would prevent her from administering the child=s medication on a consistent basis. 
E.R.=s treating
physician reported these concerns to the Texas Department of Family and
Protective Services (TDFPS), and an agreement was ultimately reached between
Monica, Charles, E.R.=s doctor,
and TDFPS that the child would be released to Charles so that he could properly
administer the medication.  However, in
2000, Charles was arrested and subsequently incarcerated for violating his
parole, thereby prompting Monica to take possession of E.R.   








In July 2004, TDFPS received
a referral alleging that Monica=s children were being physically neglected.  During the course of its investigation, TDFPS
discovered that the manager of Monica=s apartment complex was in the process of evicting her from the
property due, in part, to a fire that had originated in her unit.  Monica informed the TDFPS investigator that
the fire began as a result of C.D., Jr.=s turning on the stove while she was next door using her neighbor=s telephone.  Upon completing
its investigation, TDFPS removed all of the children from Monica=s possession and placed them with Charles, who had been living with a
friend since being released from prison in the fall of 2003.  Despite the removal, TDFPS granted Monica
supervised visitation, and she continued to maintain daily contact with the
children. 

On April 12, 2005, Carol
Lieser, a nurse affiliated with the children=s elementary school, contacted TDFPS after examining both C.D., Jr.
and Q.R. to report that the children were being physically neglected.  During the course of her examination, Lieser
discovered a green, oozing mold covering C.D., Jr.=s entire head.  According to
Lieser, the child=s head had
no hair and gave off a very strong, nauseating odor.  Lieser was finally able to determine that
C.D., Jr. was suffering from an untreated scalp infection after Monica informed
her that Charles routinely shaved the children=s heads with a dull clipper. 
Moreover, upon examining Q.R., Lieser discovered several scars and
numerous lesions all over the child=s body, in addition to a large, infected blister on Q.R.=s hand.   Following Lieser=s referral, TDFPS investigated and found reason to believe the
children were being neglected.  These
findings prompted TDFPS to take the children into protective custody and to
seek termination of Monica=s, Charles=s, and
Derrick=s respective parental rights. 
Following a bench trial, the trial court entered an order to that effect
and this appeal followed. 

 

 








                                 III.  Parent-Child Termination

A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758‑59, 102 S. Ct. 1388, 1397 (1982); see also In re M.S.,
115 S.W.3d 534, 547 (Tex. 2003).  AWhile parental rights are of constitutional magnitude, they are not
absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent‑child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002).  In a termination
case, the State seeks not just to limit parental rights but to end them
permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right to inherit.  Holick
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); see Tex. Fam. Code Ann. ' 161.206(b) (Vernon Supp. 2006). 
We strictly scrutinize termination proceedings and strictly construe
involuntary termination statutes in favor of the parent.  Holick, 685 S.W.2d at 20‑21; In
re E.S.S., 131 S.W.3d 632, 636 (Tex. App.CFort Worth 2004, no pet.).








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the Texas
Family Code, the petitioner must establish at least one ground listed under
subdivision (1) of the statute and must also prove that termination is in the
best interest of the child.  Tex. Fam. Code Ann. ' 161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).

Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  See Tex. Fam. Code Ann. ' ' 161.001,
161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).  This intermediate standard falls between the
preponderance standard of ordinary civil proceedings and the reasonable doubt
standard of criminal proceedings.  In
re G.M., 596 S.W.2d 846, 847 (Tex. 1980); In re K.W., 138 S.W.3d
420, 425 (Tex. App.CFort Worth
2004, pet. denied).  It is defined as the
Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).

                              A. 
Legal and Factual Sufficiency








In her first two points,
Monica contends that the evidence presented at trial was legally and factually
insufficient to support the trial court=s findings  that she (1)
knowingly placed or knowingly allowed her children to remain in conditions or
surroundings which endangered their physical or emotional well‑being and
(2) engaged in conduct or knowingly placed the children with persons who
engaged in conduct which endangered their physical or emotional well‑being.
 Id. ' 161.001(1)(D), (E).   

                                     B.  Standard of Review








The Texas Supreme Court
recently clarified the appellate standards of review to be applied to legal and
factual sufficiency of the evidence challenges in light of the clear and
convincing evidence burden of proof in termination proceedings.  See J.F.C., 96 S.W.3d at 264‑68
(discussing legal sufficiency review); C.H., 89 S.W.3d at 25 (discussing
factual sufficiency review).  Because
termination findings must be based upon clear and convincing evidence, not
simply a preponderance of the evidence, the supreme court has held that the
traditional legal and factual standards of review are inadequate.  J.F.C., 96 S.W.3d at 265; C.H., 89
S.W.3d at 25. Instead, both legal and factual sufficiency reviews in
termination cases must take into consideration whether the evidence is such
that a fact-finder could reasonably form a firm belief or conviction about the
truth of the matter on which the State bears the burden of proof.  J.F.C., 96 S.W.3d at 265‑66; C.H.,
89 S.W.3d at 25.  With respect to a legal
sufficiency point, we Alook at all
the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its
finding was true.@  J.F.C., 96 S.W.3d at 266.  In determining a factual sufficiency point,
we must give due consideration to evidence that the fact-finder could
reasonably have found to be clear and convincing and then determine whether,
based on the entire record, a fact-finder could reasonably form a firm
conviction or belief that the parent violated one of the provisions of section
161.001 and that the termination of his or her parental rights would be in the
child=s best interest.  Tex. Fam. Code Ann. ' 161.001; City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005); C.H., 89 S.W.3d at 25.

                                   C.  Endangerment Finding

We first review the evidence
supporting the trial court=s finding under section 161.001(1)(E) of the Texas Family Code that
Monica engaged in conduct that endangered the children=s physical or emotional well‑being.  Tex. Fam. Code Ann. ' 161.001(1)(E).  








 Under subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s well‑being was the direct result of the parent=s conduct, including acts, omissions, or failures to act.  In re R.D., 955 S.W.2d 364, 368 (Tex.
App.CSan Antonio 1997, pet. denied); Dupree v. Tex. Dep=t of Protective & Regulatory Servs., 907 S.W.2d 81, 83‑84 (Tex. App.CDallas 1995, no writ). 
Termination under section 161.001(1)(E) must be based on more than a
single act or omission; a voluntary, deliberate, and conscious course of conduct
by the parent is required. Tex. Fam.
Code Ann. '
161.001(1)(E); In re D.T., 34 S.W.3d 625, 634 (Tex. App.CFort Worth 2000, pet. denied); In re K.M.M., 993 S.W.2d 225,
228 (Tex. App.CEastland
1999, no pet.).

Endangerment, as that term is
used in the statute, means to expose to loss or injury, to jeopardize.  Boyd, 727 S.W.2d at 533; see also
In re M.C., 917 S.W.2d 268, 269 (Tex. 1996).  Although endangerment requires more than a
mere threat of metaphysical injury or the possible ill effects of a less‑than‑ideal
family environment, it is not necessary that the parent=s conduct be directed at the child or that the child actually suffer
injury. Boyd, 727 S.W.2d at 533. 
The specific danger to the child=s well‑being may be inferred from parental misconduct standing
alone.  Id.; In re R.W.,
129 S.W.3d 732, 738 (Tex. App.CFort Worth 2004, pet. denied). 
To determine whether termination is necessary, courts look to parental
conduct engaged in both before and after the child=s birth.  In re D.M., 58
S.W.3d 801, 812 (Tex. App.CFort Worth 2001, no pet.).  








The record in this case
indicates that since 1994, TDFPS has received approximately thirty‑one
referrals regarding the children. 
Rosalyn Mitchell, an investigator with TDFPS, testified to some of the
allegations made against Monica in those referrals.  According to Mitchell, the agency received a
report in 1997 alleging that Monica had pulled D.R.=s hair out of her head, causing D.R. to have bald spots.  Mitchell also stated that in 1998, another
individual filed a report alleging physical abuse against Monica after
observing numerous bruises on D.R.=s body.  TDFPS records show that
additional referrals were filed against Monica in 2002 after she was allegedly
seen Ayanking D.R. by the arm@ and slapping her in the face and after scratch marks were seen on
both D.R. and C.D., Jr. 








The evidence at trial also
showed that Monica failed to properly administer E.R.=s HIV medication while he remained in her care.  According to Mitchell, TDFPS became aware of
this allegation in 2002 through referrals that were filed with the agency.  Moreover, E.R.=s treating physician, Dr. Donald Murphy, also testified at trial that
he was able to conclude, through viral load testing, that Monica was not
consistently administering E.R.=s medication. Murphy explained that such inconsistent treatment would
eventually enable the virus to build up a resistence to the medication and
become untreatable.  The record also
indicates that during their consultations, Monica was unable to describe to
Murphy any of the medications or the dosages that she claimed to be
administering to E.R. on a daily basis. 
However, Murphy testified that Monica eventually admitted to him that
she had allowed E.R.=s
medications to run out and had not refilled them in several months.  This was later confirmed when Murphy reviewed
pharmacy records that were admitted into evidence and discovered a ninety-day
period in which Monica failed to refill any of E.R.=s prescriptions.  

Evidence in the record also
indicates that on at least two occasions, Monica left the children home
alone.  Pamela Cobb, Y.R.=s foster mother, testified that Y.R. told her that Ashe=s very
afraid when mommy leaves her home alone.@  When Cobb asked Y.R. where
Monica would go when she was left alone, the child responded by saying AI don=t know.  I would just be home alone, and I would be
afraid.@  Additionally, on the day of
the apartment fire, Monica told Mitchell that, prior to starting the fire,
C.D., Jr. had been next door with her while she used her neighbor=s telephone.  However, Y.R.
informed Cobb that Monica did not discover the fire until she returned home
with Y.R. from daycare and found C.D., Jr. in the apartment alone.  Cobb also testified that shortly after taking
Y.R. into her home, she noticed a very infected sore on the child=s right knee along with several scars and bruises on her lower back. 








Additionally, the evidence
shows that Y.R. was sexually abused while in Monica=s care.  The record indicates
that shortly after being placed in foster care, Y.R. began acting out sexually
with Barbie dolls, pillows, and stuffed animals.  When questioned about her behavior, Y.R.
informed Cobb that her brother E.R. had repeatedly Atouched@ her
inappropriately while she was residing with Monica.  Y.R. told Cobb that, after learning of these
instances, Monica spanked E.R. and told him to Anever touch her again.@  However, the record indicates
that, despite Y.R.=s outcry,
Monica repeatedly allowed the children to remain alone together and the abuse continued.  According to Cobb, Y.R. stated that after she
informed Monica of the continuing abuse, Monica told her to Anever tell anyone that he=s doing that.@ 

Nurse Carol Lieser also
testified at trial regarding her treatment of C.D., Jr. and Q.R. in April
2005.  According to Lieser, Monica
arrived at the clinic in possession of a long stick, which she used to control
the children by hitting them across the legs. 
Lieser also stated that, during the course of her examination, she
discovered a number of scars, burns, and healed circular lesions all over the
children=s bodies.  Lieser classified the
wounds as Aold data@ and stated that these injuries could have been inflicted upon the
children years ago.  








Monica now contends that she
can not be held accountable for any neglect that the children may have suffered
after being removed from her care in July 2004. 
She argues that by allowing the children to remain with Charles, as
ordered by TDFPS, she in no way endangered their physical or emotional
well-being because she had no control over their conditions or
surroundings.   However, this assertion
overlooks the fact that, prior to July 2004, Monica did in fact engage in acts
and omissions that endangered her children=s well-being.  As a result, such
conduct may serve as a proper justification for the trial court terminating her
parental rights.  See R.D.,
955 S.W.2d at 368; Dupree, 907 S.W.2d at 83‑84. 

Monica also contends that
poverty is not sufficient to support the termination of her parental
rights.  We agree that poverty is not
sufficient to establish an endangering environment. Doyle v. Tex. Dept. of
Protective & Regulatory Servs., 16 S.W.3d 390, 398 (Tex. App.CEl Paso 2000, pet. denied). 
However, in this case, Monica=s conduct serves as the underlying basis for the court=s endangerment finding at issue. 
Therefore, her poverty argument fails.








        After carefully reviewing the entire
record, looking at all the evidence in the light most favorable to the court=s finding, and giving due consideration to evidence that the
fact-finder could reasonably have found to be clear and convincing, we hold
that a reasonable trier of fact could have formed a firm belief or conviction
that Monica engaged in conduct that endangered her children=s physical or emotional well‑being.   Although Monica also challenges the legal
and factual sufficiency of the evidence with respect to the trial court=s additional findings under section 161.001(1)(D) and (E), we need not
address these points.  When multiple
grounds for termination are sought, we must uphold the court=s findings if any of those grounds are supported by evidence in the
record.  See Tex. Fam. Code Ann. ' 161.001(1); D.M., 58 S.W.3d at 813; In re S.F., 32
S.W.3d 318, 320 (Tex. App.BSan Antonio 2000, no pet.).  Therefore,
because the evidence is legally and factually sufficient to support the court=s finding that Monica engaged in conduct that endangered her children=s well-being, we need not address her remaining sufficiency
points.  See Tex. R. App. P. 47.1. 

                                     D.  AKnowing@ Finding

In support of her legal and
factual sufficiency challenge, Monica contends that she lacked the mental
capacity due to her significant intellectual deficiencies to either knowingly
endanger her children or knowingly allow them to be endangered by others.  Therefore, according to Monica, because a
prerequisite to terminating an individual=s parental rights under both subsections (D) and (E) is that the parent
knowingly engage in some type of conduct that endangers the children, the court=s termination of her parental rights pursuant to these two provisions
was improper. 








However, although both
subsections (D) and (E) reference knowledge on the part of the parent as a
necessary element in terminating the parent-child relationship, subdivision (E)
requires that a parent have knowledge only that others are engaging in
endangering conduct.  Tex. Fam. Code Ann. ' 161.001(1)(E).  The parent need
not know that his or her own conduct is dangerous for a termination order
pursuant to section 161.001(1)(E) to be proper.  Id.; see Carter v. Dallas County Child
Welfare Unit, 532 S.W.2d 140, 142 (Tex. Civ. App.CDallas 1975, no writ). 
Moreover, when a parent=s mental state allows or forces the parent to engage in conduct that
endangers the physical or emotional well‑being of the children, that
conduct is evidence bearing upon the advisability of terminating the parent‑child
relationship.  Carter, 532 S.W.2d
at 142.

In this case, even if we were
to accept Monica=s contention
that she lacked the mental capacity to knowingly endanger her children, it
cannot be said that the trial court erred in terminating her parental
rights.  Following the presentation of
all of the evidence, the court, as fact-finder, found that Monica herself
engaged in conduct that endangered the physical and emotional well-being of her
children.  See Tex. Fam. Code Ann. ' 161.001(1)(E).  Based upon that
finding, the court was statutorily authorized to terminate her parental rights
even if she did not know that her conduct was endangering her children=s well-being.  See Tex. Fam. Code Ann. ' 161.001(1)(E); Carter, 532 S.W.2d at 142.  Accordingly, we overrule Monica=s first two points.








                         IV. 
Texas Family Code Section 161.003

In her final point, Monica
challenges the trial court=s termination of her parental rights under section 161.001 of the
family code asserting that, because she suffers from a mental deficiency, TDFPS
was required by statute to initiate this termination suit pursuant to section
161.003 of the Texas Family Code.  








Section 161.003 of the Texas
Family Code authorizes termination when a parent is, by reason of a mental
condition, Aunable to
provide for the physical, emotional, and mental needs of the child@ and certain other factors exist. 
Tex. Fam. Code Ann. ' 161.003 (Vernon 2003).  Monica
cites no authority in her brief, nor have we found any, to support her
contention that termination proceedings must be brought exclusively pursuant to
section 161.003 any time the parent at issue suffers from a mental
deficiency.  Rather, Texas case law
overwhelmingly supports TDFPS=s contention that parental rights may properly be terminated under
either section 161.001 or section 161.003 in cases in which a parent=s mental illness or deficiency is relevant.  See In re M.F., 173 S.W.3d 220, 221
(Tex. App.CDallas 2005,
no pet.); In re N.H., 122 S.W.3d 391, 401 (Tex. App.CTexarkana 2003, pet. denied); In re B.L.M., 114 S.W.3d
641, 648 (Tex. App.CFort Worth
2003, no pet.); In re W.E.C., 110 S.W.3d 231, 240 (Tex. App.CFort Worth 2003, no pet.); Salas v. Tex. Dep=t of Protective & Regulatory Servs., 71 S.W.3d 783, 787-88 (Tex. App.CEl Paso 2002, no pet.); In re C.E.M., 64 S.W.3d 425, 429-27
(Tex. App.CHouston [1st
Dist.] 2000, no pet.).  Therefore, we
hold that the trial court did not err in terminating Monica=s parental rights under section 161.001 of the Texas Family Code, and
we overrule her third point.  See Tex. Fam. Code Ann. ' 161.001(1)(E).

                                          V.  Conclusion

Having found the evidence
legally and factually sufficient to support the termination finding under
section 161.001(1)(E), we affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL F:    GARDNER, WALKER, and MCCOY, JJ.

 

DELIVERED:  January 25, 2007











[1]See Tex. R. App. P. 47.4.





[2]The trial court=s order also terminated the
parental rights of the children=s respective natural fathers Derrick T. and Charles D.  However, neither Charles nor Derrick have
appealed this order.   





[3]Additionally, Monica is the natural
mother of a fifth child, D.R., who is also the subject of this termination
suit.  However, Monica has not had any
contact with D.R.=s natural father, Derrick T., in
the past two years.